## Case No. 13,355.
### STEINHAM v. UNITED STATES.
[2 Paine, 168.] [1]
Circuit Court, D. Vermont.[2]

PENAL ACTION—ILLEGAL IMPORTATION—MANIFEST—WHO BOUND TO DELIVER—DECLARATION—WITNESS—ACCOMPLICE.

1. Under the act of congress of March 2, 1821 [3 Stat. 616], regulating the entry of merchandise, the master of a vessel is not the only person bound to deliver a manifest of merchandise imported in the vessel. That duty devolves on him who has the charge and control of the merchandise; and for a violation of the law he is subject to its penalty.

2. And it is not essential that he should be actually on board the vessel when it enters the waters of the United States. As, where one put goods belonging to him on board a boat in Canada, and after she had proceeded about a mile and crossed the line, got on board himself, and remained on board until his goods were landed, he was held subject to the penalty for not delivering the manifest.

3. The act of congress declares that it shall be the duty of every person coming from a foreign territory, adjacent to the United States, into the United States, with merchandise, to deliver the manifest. The declaration averred that the defendant came from a foreign territory, viz., from Montreal, and the evidence was, that he did not come from Montreal, but from Caldwell's Manor. *Held*, that after judgment the allegation under the videlicit might be rejected as surplusage.

4. An accomplice being a competent witness, it is not erroneous for a court to direct a jury to find a verdict upon his uncorroborated evidence, if they believe him.

[Cited in Collins v. People, 98 Ill. 586; People v. Clough, 73 Cal. 352, 15 Pac. 7.]

[In error to the district court of the United States for the district of Vermont.]

At law.

THOMPSON, Circuit Justice. This case comes up on a writ of error to the district court; and the errors complained of arise upon a bill of exceptions taken at the trial. It was an action of debt brought by the United States for an alleged violation of an act of congress, entitled "An act further to regulate the entry of merchandise imported into the United States from any adjacent territory," passed the 2d March, 1821. The declaration alleges that certain goods (describing the same) were, on the 1st day of Sept., 1822, brought and imported by the defendant from a foreign territory, adjacent to the United States, into the United States, to wit, from Montreal, in the province of Lower Canada, into Swanton, in the district of Vermont, which goods, wares and merchandise, were subject to the payment of duties by the laws of the United States. That the defendant was coming from a foreign territory adjacent to the United States, to wit, from Montreal aforesaid into the district of Vermont, with the said goods, wares and mer-

[1] [Reported by Elijah Paine, Jr., Esq.]
[2] [Date not given. 2 Paine includes cases from 1827 to 1840.]

chandise, and did arrive at Swanton aforesaid with the same, and did not deliver any manifest of the goods to any collector or deputy collector, as by law required, although there was an office legally established and kept at Swanton aforesaid, for the entry of merchandise imported, &c., contrary to the form of the act in such case made and provided.

The evidence in support of this allegation consisted of one witness only, who testified in substance that he was at Caldwell's Manor, in the province of Lower Canada, in company with the defendant, when he purchased the goods; that he and the defendant put the goods into a small boat, of which George Hilliker was owner and master, and that the articles were brought into the United States by Hilliker, in said boat; that the boat came to the shore at Alburgh, within the district of Vermont. and about one mile from the place in Canada where they were put on board; and the witness and the defendant who had come by land from Canada to Alburgh, then got on board the boat, and came with the said goods to Hilliker's house in Highgate, in the district of Vermont; when the witness of the defendant unloaded the goods from the boat, a part of which were carried by them to Swanton Falls, and the remainder left in the charge of Hilliker. There was no evidence that any entry of the goods was made or manifest produced to any collector or deputy, or any duties paid; and upon this evidence the court charged the jury if they believed the witness, the United States were entitled to recover the penalty claimed. The jury found a verdict for the United States.

The errors which have been alleged and relied on to reverse this judgment, are:—(1) That the master of the boat was the proper and only person to deliver the manifest, and that he alone is liable for the penalty. (2) That the allegations in the declaration are insufficient. (3) That no recovery could be had upon the uncorroborated testimony of an accomplice.

The first objection will depend upon the construction to be given to the act of congress. The act declares that it shall be the duty of the master of any vessel, except registered vessels, and of every person having charge of any boat, canoe, or raft, and of the conductor or driver of any carriage or sleigh, and of every other person coming from any foreign territory adjacent to the United States, into the United States, with merchandise subject to duty, to deliver immediately on his arrival within the United States, a manifest of the cargo or loading of such vessel, boat, canoe, raft, carriage, or sleigh, or of the merchandise so brought from the foreign territory, at the office of any collector or deputy collector which shall be nearest to the boundary line, or nearest to the road, or waters, by which such merchandise is

brought; the manifest to be sworn to. And the act then declares that, if the master, or other person having charge of such vessel, boat, canoe, or raft, or the conductor or driver of such carriage or sleigh, or other person bringing merchandise as aforesaid, shall neglect or refuse to deliver the manifest, &c., the goods, vessel, boat, &c., shall be forfeited to the United States, and such master, conductor, or other importer, shall be subjected to pay a penalty of four hundred dollars.

No reasonable construction can be given to the terms, "other person and other importer," without applying them to a description of persons other than the commanders of vessels, boats, &c., and the drivers and conductors of sleighs and carriages. They must have been intended to embrace every description of person whose employment is not specifically designated, and who shall import or bring into the United States from any adjacent foreign territory merchandise subject to the payment of duties; and the provision would be very inadequate to the object intended by the act, unless these words should receive such construction. A passenger on board a boat might with impunity smuggle any goods, at least such as he could carry about his person, and over which the master of the boat could have no control. The duty of exhibiting the manifest devolves on him who has the charge and control of the merchandise; no other person could perform the duty, he would not have the means in his power to enable him so to do. The goods in the present case were clearly imported, or brought into the United States, by the defendant, within the sense and meaning of the act. He put them on board the boat in Canada, and took them from on board within the United States; he was not to be seen on board the boat at the moment she crossed the line. It was, however, but about one mile from the place where the goods were put on board the boat, to the place where the defendant got on board; and the jury had a right to infer that this was a mere attempt to evade the letter of the law. The master of a boat, or the driver of a carriage, cannot be bound to search every person who may be on board, to see if they have not some article of merchandise upon which duties are payable; and for small articles for which no bill of lading is given, or freight received, and in no way under the control of the master, he could not make out a manifest. He could not know, or have a right to inquire whether the owner of the goods having the charge and custody of them, intended to violate the law. The defendant is, therefore, the party on whom the penalty in this case must fall.

2. The second exception, as to the defects of the allegation in the declaration, is not well founded. It is sufficient if the declaration pursues substantially the words of the act, and this it does in the present case. It alleges that the goods were brought by the defendant from a foreign territory adjacent to the United States, into the United States, to wit, from Montreal in the province of Lower Canada, to Swanton, in the district of Vermont. The act does not require that the declaration should state to whom the foreign territory belonged. That is immaterial; and if necessary, the whole allegation under the videlicit might be rejected, and the declaration at all events, after judgment, would be good. If any objection could have arisen on this part of the case, it was, that the allegation was not supported by the evidence. The witness proved that the goods were purchased at Caldwell's Manor, and of course were not brought from Montreal; but no such objection was taken on the trial, and if it would have been well founded it comes too late now.

3. The last exception is not founded upon any facts appearing on the trial. The bill of exceptions states, that the court delivered its opinion to the jury, that they might give a verdict for the plaintiffs, on the unsupported and uncorroborated evidence of an accomplice, if they believed he swore the truth. But the witness in this case was not an accomplice; he had no interest whatever in the goods, from anything that appears, or any knowledge that the defendant intended to evade the law. It was an opinion, therefore, given by the court upon an abstract question, not applicable to the case, and if erroneous, would be no ground for reversing the judgment. But there was no error in the opinion on this point, had it been called for by the case. There can be no question but an accomplice is a competent witness. It is laid down in the books as a universal rule, that both in civil and in criminal cases, a particeps criminis may be examined as a witness, notwithstanding the immorality or the illegality of his conduct, provided he has not been convicted of any crime that incapacitates him. The objection, therefore, resolves itself entirely into a question of credibility, and this is exclusively a question for the jury, and comes within the rule laid down by the court. It may be proper, in many cases, for the court to caution a jury against convicting upon the uncorroborated evidence of an accomplice; but if he is both competent and credible, it would involve an absurdity to say his testimony was not sufficient to establish a fact. The rule, however, I consider well settled as authority, and the fitness and propriety of it on principle need not be urged. Starkie, Ev. pt. 4, pp. 17, 23; 2 Camp. N. P. 133. The judgment of the district court must, accordingly, be affirmed with costs.

NOTE. Messrs. Amos & Phillips, the editors of the 8th edition of Phil. Ev. p. 30 et seq., in discussing the weight to which the testimony of an accomplice is entitled, say:
"Since accomplices are competent witnesses, it appears to follow as a necessary consequence,

that if their testimony is believed by a jury, a prisoner may be legally convicted upon it, though it be unconfirmed by any other evidence. It is the peculiar province of the jury to determine on the degree of credit to be attached to any competent evidence submitted to their consideration; and it has accordingly been laid down in many cases as a settled rule, that a conviction obtained by the unsupported testimony of an accomplice is strictly legal. Cases cited in text to 7th Ed., p. 41, note 2, with the edition of 1 Hale, P. C. 303; per Lord Denham, 7 Car. & P. 152, and per Alderson, J., Id. 273. See. also. State v. Haney, 2 Dev. & B. 390; State v. Hardin, Id. 407. But great injustice would result if it were the practice of juries to convict upon the unsupported evidence of accomplices, whose testimony, though admitted from necessity, ought always to be received with great jealousy and caution. For, upon their own confession, they stand contaminated with guilt; they admit a participation in the very crime which they endeavor by their evidence to fix upon the prisoner; they are sometimes entitled to reward upon obtaining conviction, and always expect to earn a pardon. Accomplices are therefore of tainted character, giving their testimony under the strongest motives to deceive; and a jury would not in general be justified in giving to such witnesses credit for a conscientious regard to the obligation of an oath. Sometimes they may be tempted to accuse a party who is wholly innocent, in order to screen themselves, or a guilty associate; and if the prisoner has been their participator in crime, they may be disposed to color and exaggerate their statement against him, with a view to hide their own infamy, or, by obtaining his conviction, to protect themselves from his vengeance, and secure the expected benefit. The doctrine, therefore, of a legal conviction upon the unsupported evidence of an accomplice has been greatly modified in substance and effect; and it has long been considered as a general rule of practice, that the testimony of an accomplice ought to receive confirmation, and that, unless it be corroborated in some material part by unimpeachable evidence, the presiding judge ought to advise the jury to acquit the prisoner.

"It has been laid down that the practice of requiring some confirmation of an accomplice's evidence must be considered in strictness as resting only upon the discretion of the presiding judge. See per Lord Ellenborough, in Rex v. Jones. 2 Camp. 132; and see State v. Haney, and State v. Hardin, et supra. And this, indeed, appears to be the only mode in which it can be made reconcilable with the doctrine already stated, that a legal conviction may take place upon the unsupported evidence of an accomplice. But it may be observed that the practice in question has obtained so much sanction from legal authority, that a deviation from it on the part of a judge in any particular case, would, at the present day, appear singular and of questionable propriety. Although the judge does not, in express language, declare that a case depending on the unconfirmed evidence of an accomplice, is insufficient in law to warrant a conviction, but merely advises the jury not to place credit on the evidence; yet, as it is not likely an instance should arise in which the jury would disregard the advice so given, and convict the prisoner, the substantial result appears to be nearly the same, as if the practice had depended on a rule of law, instead of being the exercise of the discretion of the presiding judge. The only distinction appears to be, that if the judge were to submit a case of this nature to the jury without any such recommendation, and a conviction ensued; or, if a jury were to convict in opposition to the recommendation of the judge, it could not properly be said in either case, consistently with the authorities on the subject, that the conviction would be illegal.

"From the anomalous nature of the rule of practice requiring confirmation, more especially from the circumstance that it is considered in law to rest merely upon the discretion of the presiding judge, and that it appears in fact to have originated in the exercise of such discretion, it might be expected that some difference of opinion would arise as to the nature and extent of the necessary confirmation. It is clearly unnecessary that the accomplice should be confirmed in every circumstance which he details in evidence; for there would be no occasion to use him at all as a witness, if his narrative could be completely proved by other evidence free from all suspicion. See report of the trials at York, on special commission, 1813, pp. 16, 17, 50, 150, 165, 201, particularly the charges of Thompson, C. B., in Rex v. Swallow, and of Le Blanc, J., in Rex v. Mellor. The rule on the subject which has generally been laid down is, that if the jury are satisfied that he speaks truth in some material part of his testimony, in which they see him confirmed by unimpeachable evidence, this may be a ground for their believing that he also speaks truth in other parts, as to which there may be no confirmation. Id., and Despard's Case, 28 How. State Tr. 488, and per Lord Ellenborough, 31 How. State Tr. 325; Rex v. Barnard, 1 Car. & P. 88. So far all the authorities agree; but the point upon which a difference of opinion and practice appears to have prevailed is, as to the particular part or parts of the accomplice's testimony which ought to be confirmed. In some cases it has been considered that the confirmation ought to be such as affects the person of the prisoner, and connects him directly with the crime; but in other cases this description of confirmation has been considered unnecessary, and it has been held, that confirmation of the accomplice in other parts of his testimony, which do not affect the identity of the prisoner, may be sufficient to entitle the accomplice to credit, and to warrant the judge in leaving the case to the jury without a recommendation to acquit.

"In the first case in which this question appears to have been expressly raised, two prisoners had been convicted on the evidence of an accomplice, who was confirmed as to the circumstances attending the offense, but not as to the identity of the prisoners; and the judges were unanimously of opinion that the conviction was good, upon the general ground already mentioned; namely, that a prisoner may legally be convicted upon the unconfirmed evidence of an accomplice. Rex v. Atwood. Leach, Crown Cas. 464, cited in 7 Term R. 609. In a case occurring shortly afterwards, a similar decision took place, and, as it appears, on the same ground. At the trial the court observed, that the practice of rejecting an unsupported accomplice was rather a matter of discretion with the judge, than a rule of law; and the case having been left to the jury, and the prisoner convicted, the judges afterwards held the conviction good. Rex v. Durham, Leach, Crown Cas. 478. It was, however, said in this case, that the witness (a receiver) was rather an accessory after the fact than an accomplice in the fact. In Rex v. Smith and another, reported in a note to the last case, where the only witness affecting the prisoners was an accomplice, the court admitted the rule of law, that the uncorroborated testimony of an accomplice was legal evidence, but thought it too dangerous to suffer a conviction to take place on such testimony, and the prisoners were acquitted. The same general doctrine was subsequently laid down in Rex v. Jones, 2 Camp. 132, 31 How. State Tr. 325, by Lord Ellenborough, who there referred to a case in which the judges were of opinion that four prisoners had been properly convicted upon the testimony of an accomplice, whose evidence had been confirmed as to three of the prisoners, but not as to

the fourth. And in the report of the York trials under a special commission, it was laid down by C. B. Thompson, that confirmation need not be of circumstances which go to prove that the accomplice speaks truth with respect to all the prisoners, (when several are tried,) and with respect to the share they have each taken in the transaction; for, if the jury are satisfied that he speaks truth in those parts in which they see unimpeachable evidence brought to confirm him, that is a ground for them to believe that he speaks also truly with regard to the other prisoners, as to whom there may be no confirmation. Rex v. Swallow; 31 How. State Tr. 325. Again, in a later case, where an accomplice was confirmed as to one of several prisoners jointly indicted, but not as to the others, Bayley, J., told the jury, that if they were satisfied from the confirmation, that the accomplice was a credible witness, they might act on his testimony with respect to the prisoners, as to whom he had not been confirmed, and they were convicted. Rex v. Dawbar, N. P. Cas. 34, and see Rex v. Barnard, 1 Car. & P. 88, per Hullock, B. In Birkett's Case, Russ. & R. 252, on a case reserved, the judges were of opinion that an accomplice did not require confirmation as to the person charged by him, if he were confirmed in the other particulars of his statement. And in a very recent case at the Old Bailey, before Lord Denham, Mr. Justice Park and Mr. Baron Alderson, when the counsel for the prosecution stated that he should not be able to confirm an accomplice, who was to be called as a witness, with regard to the persons of the prisoners, but only as to the general circumstances of the case, Lord Denham said he considered, and he believed his learned brothers concurred with him, that it was altogether for the jury, who might, if they pleased, act on the evidence of the accomplice without confirmation; but observed, that a person so situated, would not be likely to receive any great degree of credit. Rex v. Hastings, 7 Car. & P. 152. The prisoner was, however, acquitted, as on hearing the case there was contradiction rather than confirmation.

"The authorities above stated appear to show, as it has been before observed, that the rule, which requires some confirmation of an accomplice to be given, is to be considered, not as a strict rule of law, but as a practice depending on the discretion of the presiding judge. And these authorities also show, that judges, in the exercise of their discretion, have generally, if not always, considered that some confirmation ought to be given, but have not considered evidence, affecting the identity of the prisoners charged, to be essential for the purpose of confirmation. On the other hand, there are several recent decisions in which judges, in the exercise of their discretion, have thought confirmatory evidence of identity ought to be given. Thus, in the case of Rex v. Addis, 6 Car. & P. 388, an accomplice who was the principal witness, was corroborated as to collateral facts, none of which tended to connect the prisoner with the accomplice, or with the transaction: Mr. Justice Patteson observed, that the corroboration ought to be as to some fact or facts, the truth or falsehood of which would go to prove or disprove the offence charged against the prisoner. And in a subsequent case (Rex v. Webb, Id. 595), where it was proposed on the part of the prosecution, to confirm the accomplice as to the mode in which the felony was committed, Mr. Justice Williams said, that something ought to be proved which would tend to bring the matter home to the prisoners, and that confirming the accomplice as to the mode in which the felony had been committed, was not enough to entitle his evidence to credit, so as to affect other persons; that in fact this would be no confirmation at all, since every one would give credit to a man avowing himself a principal felon, for at least knowing how the felon was committed. In a later case, on an indictment against two persons, the same doctrine was laid down by Mr. Baron Alderson (Rex v. Wilkes, 7 Car. & P. 272), who pointed out the distinction between confirmation as to the circumstances of the felony, and confirmation affecting the individuals charged; the former only proves that the accomplice was present at the commission of the offence; the latter shows that the prisoner was connected with it. In summing up, the judge observed, that confirmation merely as to the circumstances of the felony, was really no confirmation at all; that it was true, the jury might legally convict on the evidence of an accomplice only, if they could safely rely on his testimony, but that he always advised juries not to act on the evidence of the accomplice, unless confirmed as to the particular person charged with the offence. After adverting to the facts of the case, as affecting the two prisoners, the same judge stated to the jury, that if they thought the accomplice was not sufficiently confirmed as to one, they would acquit that one, and that if they thought he was confirmed as to neither, they would acquit both. In another case (Rex v. Moores, Id. 270), where a thief and receiver were jointly indicted, the same learned judge expressed his opinion, that confirmation as to the thief, did not advance the case against the receiver. And in a former case of a similar description, where there was a slight confirmation as to the receiver, but none as to the principal felon, Littledale, J., thought the case failed altogether, and that the accomplice ought to be confirmed as to the principal, before the jury could be asked to believe the witness' testimony. Rex v. Wells. Moody & M. 326. The ground of this decision appears to have been, that it was necessary to establish the guilt of the principal, by confirming the accomplice as to him, before the question of the guilt of the receiver could arise.

"From the class of cases which have been last cited, it will appear that the recent practice of several judges, in exercising their discretion as to the evidence that ought to be adduced, in order to entitle an accomplice to credit, has been to require a confirmation upon some point affecting the person of the prisoner charged; and that when several prisoners are jointly tried, confirmation is to be required as to all of them, before all can be safely convicted. Indeed, it would be difficult to assign a satisfactory ground for requiring confirmation as to the person of a prisoner indicted alone, and dispensing with confirmation as to prisoners jointly indicted; the same reasons which render confirmation necessary in the former cases, appear to require it in the latter; if a distinction between the two cases were allowed, a prisoner's acquittal or conviction, upon an accomplice's testimony, might depend upon the mere accident of his being indicted alone, or jointly with others. It will be observed, that it is still laid down by judges, even when calling for this personal confirmation, that the jury, if they think proper, may legally convict upon an accomplice's testimony unsupported; and that in the absence of such support, they do not withdraw the case from the jury, but only advise them not to give credit to the accomplice. Whether the rule of practice, which, as we have seen, has been recently followed, will be adopted as a general rule, by which all judges will consider themselves bound, may, perhaps, not be wholly free from doubt, but the weight of the latter authorities appears to be in favor of such a rule. The distinction between confirmation, as to the manner in which an offence was committed, and as to the parties by whom it was committed, is of obvious importance; and although cases may arise, in which, from the confirmation of an accomplice, as to the circumstances attending the commission of a crime, the jury may be led to conclude that the accomplice speaks truth with regard to the person charged, still as the two

points are, in general, essentially different, great caution is to be used in drawing such a conclusion. If the witness has really been an accomplice, as he states himself to be, he must be acquainted with the manner in which the offence was committed; and in describing the manner, it would not, in general, be the interest or desire of an accomplice to swear falsely. But with respect to persons concerned, there may be strong reasons to infer the existence of motives which would induce an accomplice to fabricate or pervert some facts against a party charged, notwithstanding the other facts related by him may be indisputably true, or even notwithstanding the general consistency of his story may be clearly established.

"This subject, so important in itself, has created much difference of opinion at the Irish bar. See an anonymous pamphlet by an Irish barrister, Dublin, 1824; the object of which is to prove that some evidence of personal identity ought to be given in all cases. And see the tract of C. B. Joy, which, though recently published, was written some years ago, in answer to the former pamphlet. The lord chief baron considers that the rule of practice, requiring confirmation, may be satisfied by corroborating parts of the accomplice's evidence, not affecting the persons of the prisoners. In the preface, the learned writer states, that he was induced to publish his treatise in consequence of the cases of Rex v. Addis and Rex v. Webb, cited supra. But the subsequent cases to the same effect, were probably not published when the tract of the chief baron appeared; they are not referred to by him, neither does he allude to the previous case of Rex v. Wells, supra. It appears that the practice of requiring confirmation, when the case for the prosecution is supported by an accomplice, applies equally when two or more accomplices are brought forward against the prisoner. In a case in which two accomplices spoke distinctly to the prisoner's guilt, Mr. Justice Littledale told the jury that, if their statement were the only evidence against him, he could not advise them to convict; observing, that it was not usual to convict on the evidence of one accomplice without confirmation, and that, in his opinion, it made no difference whether there were more accomplices than one. Rex v. Noakes, 5 Car. & P. 326. But see Joy's work, cited supra, page 100, contra, though he does not cite Rex v. Noakes. He refers to the speeches of the Sol. Gen. and Mr. Serg. Best, in Rex v. Despard, 28 How. State Tr. 428. See on this subject the anon. pamph. cited supra, observations as to the trial of the incendiaries of Wild Goose Lodge—arson by more than 100 persons marching in three parties, from distant points not connected with each other. The accomplices were selected as witnesses from different parties. See further, on the general subject, Sir T. Witherington's arg., 5 How. State Tr. 176; discussion on Layer's Case, 16 How. State Tr. 158; Sir R. Atkyn's remarks, 9 How. State Tr. 721, as to the evidence of an indicted accomplice; Murphy's Case, 19 How. State Tr. 705; Sir T. Copley's remarks in Watson's Case, 32 How. State Tr. 513; Lord Ellenborough's charge in Watson's Case, Id. 583; Lord Tenterden's charge in the Cato-street conspiracy, 33 How. State Tr. 689. It appears to have been held in a late case, that a confirmation by the wife of an accomplice, would be insufficient; it was said that the wife and the accomplice must be considered as one, for this purpose. Rex v. Neal, 7 Car. & P. 168, per Park, J. In another recent case, in which the prisoner was indicted for manslaughter at a fight, it was objected that all persons who had been present, were principals in the second degree, and that their evidence ought to receive confirmation, as in the case of accomplices; but Mr. Justice Paterson was of opinion that they were not such accomplices as would require any further evidence to confirm them. Rex v. Hargrave, 5 Car. & P. 170."